IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| **Plaintiff-Appellee,** | : |
| vs. | :    Case No. 23-3566 |
| **MATTHEW BORGES,** | : |
| **Defendant-Appellant.** | : |

Direct Appeal from a Criminal Judgment
Entered In the United States District Court for the
Southern District of Ohio (Cincinnati)
Docket No. 1:20-cr-00077-4
(Timothy S. Black, District Judge)

**REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT-APPELLANT FOR
RELEASE PENDING APPEAL**

The government's response directs considerable energy to persuading the Court that the "Fehrman bribe payment" was a relatively minute piece of the prosecution's case against Defendant-Appellant Matthew Borges ("Borges"). It insists that his RICO conviction "stands even if the Court were to accept his arguments related to the Fehrman bribe" due to the "other racketeering acts" that he committed or agreed to.

The prosecution's closing arguments tell a different story. The first part

of closing consumes ten transcript pages discussing the "Fehrman bribe" and the reasons why the prosecution believed Borges is guilty of the RICO conspiracy due to his active participation in private honest services fraud ("HSF") and a Travel Act violation. (Transcript, R. 238, Page ID##9521-23, 9526-32) As for Borges' alleged involvement in money laundering? One paragraph. (*Id*. at 9535) The prosecution's rebuttal argument was slightly less lopsided. Four transcript pages of argument are directed to the "Fehrman bribe" (Transcript, R. 239, Page ID##9640-44); two paragraphs to money laundering. (*Id.* at 9638)

Borges' payment to Fehrman for the signature counts was the centerpiece of its RICO case against him. The closing arguments confirm that the correctness of the HSF and Travel Act instructions is a "question [] so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in [his] favor." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (cleaned up).

To be sure, the government and Borges hold vastly divergent positions on the significance of Supreme Court precedent. The government regards *Ciminelli v. United States*, 143 S. Ct. 1121 (2023) and *Percoco v. United States*, 143 S. Ct. 1130 (2023) as *ad hoc* rulings, devoid of any broadly applicable principles of construction and serving no purpose other than adjudicating the dispute between the parties to the appeal.

According to the government, *Ciminelli* does not apply because Borges was not prosecuted under a "right to control" theory, and *Percoco* is irrelevant because he was not accused of public sector HSF as a quasi-public official. The district judge endorsed this view, refusing to allow Borges an opportunity to offer a contrary viewpoint.

The precedential significance of *Ciminelli* and *Percoco* becomes apparent when one compares this Court's 1997 opinion in *United States v. Frost*, 125 F.3d 346 (6th Cir. 1997) with a First Circuit opinion that was decided exactly one day prior to those Supreme Court rulings, *United States v. Abdelaziz*, 68 F.4th 1 (1st Cir. 2023).

The *Frost* hearing panel rendered an *ad hoc* ruling that in the context of the mail fraud statute, a public university has a property interest in an "unissued university degree" due to the potential for economic harm if it became known that it was "awarding degrees to inept students." *Id.* 125 F.3d at 367. In contrast, the hearing panel in *Abdelaziz* was unwilling to accept the government' "categorical argument" that public university "admissions slots" enjoy the status of a property interest for purposes of the wire fraud statute. *Id.* 68 F.4th at 34.

The *Abdelaziz* panel rejected as "sweeping too broadly" the government's proposal that property includes anything that is "exclusive and economically

3

valuable" to its owner. *Id.* at 37. It pointed to the lack of any legal authorities, such as legal dictionary definitions, treatises, or case law, that would have put the defendants on notice that "admission slots" are property. *Id.* at 34.

Neither *Frost* nor *Abdelaziz* involved the "right to control" theory or a prosecution of a private defendant having influence on government decision-making. Yet can there be any doubt that *Ciminelli*'s declaration that "the wire fraud statute reaches only traditional property interests," *id.* 143 S.Ct. at 1128, and *Percoco*'s rejection of the prosecution's reliance on outlier pre-*Skilling* case law, *id.* 143 S.Ct. at 1138, support the First Circuit's narrow interpretation of property in *Abdelaziz*, and require a re-assessment of the viability of this Circuit's open-ended approach in *Frost*?

The government is unable to cite legal dictionaries, treatises, or case law supporting its position that raw data – the signature counts – qualify as a traditional property interest such that would support a conviction for wire fraud under a private sector HSF bribery scheme. Instead it continues to rely on *Frost*'s directive that a property interest is anything a putative victim of an alleged bribery scheme regards as its property. The correctness of the *Frost*-based jury instructions that were used to convict Borges is surely "a close question or one that could go either way." *Pollard*.

4

The government characterizes as "entirely undeveloped" Borges' argument that premising a Travel Act violation on an Ohio Infiltration Statute violation "upsets the delicate balance between state and federal powers." This critique ignores Borges' citation to *Coast Candidates PAC v. Ohio Elections Comm'n,* which describes in detail the intricate state administrative process that must be exhausted before someone may be prosecuted for a violation of the statute. *Id.* 543 Fed. Appx. 490, 492 (6th Cir. 2013), *vacated on other grounds*, 573 U.S. 928 (2014). Unlike a garden variety misdemeanor charge which may be filed directly with a clerk of courts, a charge based on a violation of the Infiltration Statute must be approved by a committee of election law experts – the Ohio Elections Commission – before it may referred to a prosecuting attorney. *Id.*

The United States Attorney bypassed this state procedure by charging an alleged violation of the state statute as a predicate act of the RICO conspiracy. Whether this ploy intrudes on Ohio's interest in vesting complete discretion and control over such prosecutions to a state-created administrative body likewise is "a close question or one that could go either way." *Pollard*.

For these additional reasons, Borges asks the motions panel to grant his motion for release pending appeal.

        s/Dennis C. Belli
        DENNIS C. BELLI
        536 South High St. Fl. 2
        Columbus, Ohio 43215-5785
        Phone:(614) 300-2911
        Fax: (888) 901-8040
        E-Mail: bellilawoffice@yahoo.com
        ATTORNEY FOR DEFENDANT-
        APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, I electronically filed the foregoing with the Clerk of this Court using the ECF system, which will send notification and a copy of such filing to Alexis J. Zouhary, Assistant United States Attorney, Attorney for Plaintiff-Appellee United States of America.

        s/Dennis C. Belli
        DENNIS C. BELLI
        ATTORNEY FOR DEFENDANT-
        APPELLANT

CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2019, I electronically filed the foregoing with the Clerk of this Court using the ECF system, which will send notification and a copy of such filing to Matthew B. Call, Assistant United States Attorney, Attorney for Plaintiff-Appellee United States of America.

s/Dennis C. Belli<br>
DENNIS C. BELLI<br>
ATTORNEY FOR DEFENDANT-APPELLANT