IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff-Appellee, | : | |
| vs. | : | Case No. 23-3566 |
| **MATTHEW BORGES,** | : | |
| Defendant-Appellant. | : | |

Direct Appeal from a Criminal Judgment
Entered In the United States District Court for the
Southern District of Ohio (Cincinnati)
Docket No. 1:20-cr-00077-4
(Timothy S. Black, District Judge)

# DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

DENNIS C. BELLI
536 South High St. Fl. 2
Columbus, Ohio 43215-5785
Phone:(614) 300-2911
Fax: (888) 901-8040
Email: bellilawoffice@yahoo.com
ATTORNEY FOR DEFENDANT-
APPELLANT

# REQUIRED STATEMENT FOR REHEARING EN BANC

Defendant-Appellant Matthew Borges ("Borges") petitions the Court to rehear this appeal en banc pursuant to Fed. R. App. P. 35. Borges asserts that the panel decision conflicts with the published decisions of this Court in *United States v. Joseph*, 781 F.2d 549 (6th Cir. 1985) and *United States v. Driver*, 535 F.3d 424 (6th Cir. 2008), and that consideration by the full Court is therefore necessary to secure and maintain uniformity of the Court's decisions.

                                                       s/Dennis C. Belli
                                                       DENNIS C. BELLI
                                                       ATTORNEY FOR DEFENDANT-APPELLANT

# ARGUMENT

The Supreme Court in *Salinas v. United States* issued a writ of certiorari to resolve a split in the circuits on the following question: "[D]oes the conspiracy prohibition contained in the Racketeer Influenced and Corrupt Organizations Act (RICO) apply only when the conspirator agrees to commit two of the predicate acts RICO forbids?" *Id.* 522 U.S. 52, 54 (1997). The Court answered "no." *Id.* at 63.

1

Unfortunately this disposition fell short in one critical respect. The High Court failed to clarify what proof is needed to establish that a particular defendant had entered into a racketeering agreement. One commentator offered the following critique of the Court's ruling on this point:

> The decision is probably correct in its narrow holding that individuals do not need to personally agree to the commission of two predicates to be liable under RICO conspiracy. . . . . However, the decision should have been more precise. *Even if a defendant need not personally agree to commit two predicate acts, must he specifically agree or know that someone will commit two predicate acts?*

Sarah Baumgartel, The Crime of Associating with Criminals, 97 Journal of Criminal Law and Criminology 1, 40-41 (Fall 2006) (emphasis supplied).

A source of much confusion regarding the scope of a RICO agreement is the following language in the *Salinas* opinion: "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* 522 U.S. at 65.

Does this clumsy (and arguably contradictory) phrasing mean that proof of a general intent to accomplish the criminal objective of the enterprise is sufficient? Or must the prosecution prove that a defendant's agreement embraced the commission of at least two predicate racketeering acts (by someone, not

necessarily the defendant) to further the enterprise's objectives? There is a split of authority in the Circuits on this subject.

Justice White framed the majority view as follows: "[A] majority of Courts of Appeals [hold] that a conviction for RICO conspiracy does not require that the defendant personally agree to commit two or more predicate acts of racketeering; rather, it is sufficient if the defendant agrees to the commission of the predicate acts by another coconspirator." *Pryba v. United States*, 498 U.S. 924, 925 (1990) (White, J., dissenting from denial of certiorari).

The Fifth Circuit has taken a contrary view. It only requires the government to prove "that the defendant knew of and agreed to the overall objective of the RICO offense." *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005). Under this approach, "the Government is not required to prove that the defendant agreed to the commission of two predicate acts." *United States v. Hinojosa*, 463 Fed. Appx. 432, 443 (5th Cir. 2012).

The earliest decision of this Circuit to address this question – *United States v. Joseph* – adopted the majority view. *Id.* 781 F.2d at 554 ("For a conspiracy conviction it is . . . necessary to prove that the defendant . . . agreed that another violate §1962(c) by committing two acts of racketeering activity."). The Law of the Circuit, as announced in *Joseph,* imposes a duty on a reviewing court to

3

carefully parse the record with an eye toward identifying at least two predicate crimes that the defendant agreed someone in the conspiracy would commit.

The Court did precisely that in a second appeal of Joseph's RICO conspiracy conviction. *See United States v. Joseph*, 835 F.2d 1149 (6th Cir. 1987). It scrutinized the trial record and identified two separate instances where the defendant conspired with others to violate a state gambling statute. It concluded that "[t]hese violations establish the predicate acts necessary for a conspiracy conviction pursuant to 18 U.S.C. § 1962(d)." *Id.* at 1152-53.

The distinction between the majority and minority positions is genuine. The outcome of an appeal from a RICO conspiracy conviction may very well turn on which standard is applied by a reviewing court.

The decision of this Court in *United States v. Driver* is a good example. As discussed in more detail later in this petition, the Court reversed the defendant's RICO conspiracy despite ample trial testimony that his agreement embraced the overall objective of the criminal enterprise (drug trafficking). *Id.* 535 F.3d at 429-30. The Court reasoned that the prosecution had failed to prove that the scope of his agreement included a second predicate racketeering act. *Id.* at 432-33.

4

On direct appeal from his RICO conspiracy conviction, Borges challenged 1) the sufficiency of the evidence to support an agreement on his part that someone in the enterprise would commit at least two predicate crimes, 2) the district court's denial of his motion to strike invalid RICO predicates pertaining to a "bribe" payment to another (Tyler Fehrman) for information, and 3) instructions permitting the jury to consider the invalid predicates.

The hearing panel affirmed Borges' conviction. In a per curiam opinion, it declined to rule on the merits of his second and third claims (pertaining to the invalid predicates). It reasoned that "[e]ven if the Fehrman payment is not a valid predicate, it still evinces Borges's intent to further the Householder enterprise because intent to further the enterprise need not be shown through predicates or even criminal activity." (Slip Opinion, at 38)

As to the insufficiency claim, the panel did not parse the trial testimony (as required by this Court's decision in *Joseph*) for the purpose of identifying what predicate RICO acts (if any) that Borges agreed someone in the conspiracy would commit. It felt this exercise was unnecessary because "[t]here is ample evidence that Borges knew and agreed to facilitate the illegal activity involved in the Householder enterprise." (*Id.*)

5

In sum, the hearing panel felt that evidence of Borges's agreement to further the overall objective of the enterprise was sufficient to establish his guilt of a RICO conspiracy. This rationale was a de facto application of the minority view followed in the Fifth Circuit. Borges submits this approach cannot be reconciled with the Law of the Sixth Circuit as announced in *Joseph* and as applied in *Driver*. His arguments in support follow.

*Procedural Background*

The government's main target in this prosecution was Larry Householder, the former speaker of the House of Representatives of the Ohio General Assembly. The government accused him of accepting bribe money from FirstEnergy Corp., an Ohio electric utility, in exchange for sponsoring, and using his influence to pass, a legislative solution (i.e. a "bailout") to stem the company's losses associated with two failing nuclear plants. The legislation – House Bill 6 ("HB 6") – passed and was signed into law by the Ohio Governor.

What was Borges's role in this affair? The Householder faction feared their victory in the legislature might be reversed due to a threat posed by a citizens' ballot referendum (the "Ballot Campaign"). If the referendum succeeded, HB 6 would have been placed on hold until the following year's general election.

6

The government alleged that Borges participated in a scheme to defeat the Ballot Campaign through efforts to deprive its proponents of the needed number of voter signatures to place the referendum on the ballot. The campaign ultimately failed to collect enough signatures.

A *single* section of the 43-page indictment, entitled "Defeating the HB 6 Ballot Campaign," outlines the core of the government's theory that Borges is guilty of a RICO conspiracy. (Indictment, R. 22, Page ID##1281-84) It asserts that Borges agreed to the commission of two racketeering acts in furtherance of the objectives of the Householder Enterprise: 1) use of a bank account of his consulting firm to engage in money laundering of funds dedicated to the defeat of the Ballot Campaign, and 2) commission of honest services wire fraud and/or a Travel Act violation through a payment of $15,000 to Tyler Fehrman for statistical information regarding the number of signatures collected by his employer at various points in time during the campaign.

The gist of Borges's defense was two-fold: 1) the deposits to his business bank account occurred after passage of HB 6, and therefore did not involve bribe money; and 2) the wire fraud and Travel Act predicates were invalid as a matter of law.

The district court denied Borges's pretrial motion to strike the invalid predicates from the indictment. Over Borges's objection, the district judge instructed the jurors that they could consider the wire fraud and Travel predicates as satisfying the racketeering elements of the RICO conspiracy count. The jury found Borges guilty.

*The Panel's Decision Cannot Be Reconciled with Driver*

This Court's decision in *Driver* addressed the impact of an invalid Travel Act predicate in a RICO conspiracy prosecution. Gregory Driver was a member of the Outlaws Motorcycle Club ("OMC"). The government maintained that the OMC was a racketeering enterprise engaged in drug trafficking activity in several states for several years.

The RICO conspiracy count alleged that Driver agreed to a pattern of two racketeering acts consisting of a cocaine trafficking conspiracy (Racketeering Act #1(A)) and a Travel Act violation (Racketeering Act #12). During trial, the prosecution elicited testimony that Driver picked up kilogram quantities of cocaine for the OMC president over a four year period. Witnesses testified that he also sold cocaine supplied by other OMC members.

On direct appeal, Driver challenged the sufficiency of the evidence to support his RICO conspiracy conviction. The hearing panel agreed that testimony

8

about Driver's involvement in transporting and selling cocaine with other OMC members supplied "sufficient evidence to establish that Driver committed Racketeering Act 1(A)." *Id.* at 432. But it determined that the evidence fell short of proving "that Driver committed or assented to the Travel Act violation alleged as Racketeering Act 12." *Id.*

The hearing panel rejected the government's contention that Driver's "extensive contact" with an OMC chapter president was sufficient to prove criminal intent. The panel reasoned that his association with club leadership "does not establish that Driver assented to any of the predicate acts allegedly attributable to [him]." *Id.* at 433. It therefore reversed his RICO conviction due to insufficiency of the evidence.

The hearing panel that decided Borges's appeal tersely disavowed any need to parse the trial record for evidence that his agreement contemplated the commission (by someone) of at least two RICO predicates. The per curiam opinion explains that it was sufficient that "Borges knew the object of the enterprise was to get the bailout deal done and knew the enterprise was using illegal means to make it happen." (Slip Opinion, at 38)

This methodology cannot be reconciled with *Driver*. After all, if mere knowledge of the object of a racketeering enterprise and assent to the illegal

9

conduct employed to accomplish that objective was all that was necessary to prove a defendant's guilt of a RICO conspiracy, this Court would have upheld Gregory Driver's conviction. Instead the *Driver* panel reversed his conviction because the evidence fell short of proving that Driver agreed to a second predicate act (a Travel Act violation).

*The Panel's Failure to Apply the Law*
*of the Sixth Circuit Prejudiced Borges*

The per curiam opinion mentions testimony about Borges "regularly communicating" with a FirstEnergy lobbyist (Juan Cespedes) during the time period prior to the passage of HB 6. It states that Borges offered advice to the lobbyist regarding certain legislators and language in the bill. (Slip Opinion, at 38)

It needs to be emphasized that the indictment does <u>not</u> accuse Borges of participating in the Householder Enterprise prior to the passage of HB 6. Nor does it allege that Borges agreed to any predicate acts before the enactment date.

The indictment is quite precise in alleging that Borges' entry into the RICO conspiracy occurred after the HB 6 legislation had passed the Ohio General Assembly and had been signed into law by the Ohio Governor. (Indictment, R. 22, Page ID##1249-50) The conspiracy count identifies money laundering,

honest services wire fraud, and a Travel Act violation, as the predicate crimes that were the subject of Borges's agreement. (*Id.* at 1283-84)

The government's money laundering theory was fatally flawed from the outset. The money laundering statute requires the prosecution to demonstrate that the laundered funds involved proceeds of "specified unlawful activity." 18 U.S.C. §1957. The AUSA told the jury in closing argument that the deposits into the bank account of Borges's consulting company involved "bribe money." (Day 24 Tr., R. 238, Page ID#9535)

During the pendency of Borges's appeal, the Supreme Court issued an opinion reiterating the long-standing common law rule that the crime of bribery is completed when money is given to a public official with intent to influence him with respect to a "future official act." *Snyder v. United States*, 603 U.S. 1, 5 (2024) ("bribes are payments made or agreed to before an official act in order to influence the official with respect to that future official act.")

The deposits into Borges' bank account occurred <u>after</u> the official act was accomplished – the enactment of HB6. The bank deposits, as a matter of law, could not have involved proceeds derived from bribery.

The indictment states the purpose of the deposits was "to defeat the Ballot Committee." (Indictment, R. 22, Page ID#1283) An effort to defeat a voter

11

referendum is not an act listed in the definition of "specified unlawful activity" under 18 U.S.C. §1956(c)(7). The deposits of FirstEnergy money into Borges's business account therefore did not violate the money laundering statute.

The government attempted to raise a new theory of money laundering in the direct appeal. Its brief proposed that the deposits into the bank account were remuneration for Householder's contingency plan to re-introduce the HB 6 subsidy as a "tax" in the event the voter referendum succeeded (Appellee Brief, at 68-70)

This proposition is a red herring. The indictment is very specific about the purpose of the deposits *after* passage of HB 6, *i.e.* to defeat the referendum. (Indictment, R. 22, Page ID##1281-86) It does not mention a plan for alternative legislation. And in any event, the government did not call officers of FirstEnergy to testify that the post-HB 6 payments were made for some purpose other than to defeat the referendum effort.

Thus, without proof that Borges's agreement embraced money laundering, the remainder of the government's case against him consisted of his agreement to pay Tyler Fehrman for periodic tallies of the number of voter signatures that his employer was collecting. The government claimed this payment violated the Travel Act and the wire fraud statute.

In a concurring opinion, Judge Thapar agrees that "Borges raises a compelling argument about his Travel Act charge. In effect, the federal government's use of a state election law turned a statute the state has never used into a magic bullet to convict Borges." (Slip Opinion, at 51) He also acknowledges that "Borges raises compelling arguments about his honest services predicate." (*Id.* at 63).

Yet the judge lamented that " as the per curiam explains, we need not decide these thorny issues today. The broad sweep of conspiracy law is sufficient to affirm Borges's sentence." (*Id.* at 54).

The thrust of this en banc petition is that the RICO conspiracy statute does <u>not</u> sweep so broadly. Under the Law of the Circuit, as announced in *Joseph* and as applied in *Driver,* a generalized intent to further or facilitate a criminal enterprise is <u>not</u> enough to sustain a RICO conviction. As Borges sees it, the hearing panel did have an obligation to resolve these "thorny issues."

## Conclusion

This Court's decision in *Joseph* is the first published case on the subject of the evidentiary requirements for proving the agreement element of a RICO conspiracy charge. *Joseph* requires a reviewing appellate panel to parse the trial

13

record for the purpose of identifying evidence of two predicate racketeering acts that a particular defendant agreed that someone in the conspiracy would commit.

The three judges that decided Borges's appeal stated in no uncertain terms that they were not going to engage in this exercise. Although they did not mention Fifth Circuit case law, the panel in essence was applying the minority view that only requires proof that a particular defendant "knew of and agreed to the overall objective of the RICO offense." *Delgado*, 401 F.3d at 296. The Fifth Circuit has even admitted that its view conflicts with the case law of the Sixth Circuit. *Hinojosa*, 463 Fed. Appx. at 443 (citing *Driver*).

Judge Readler recently offered an especially cogent explanation of the policy reasons underlying the Law of the Circuit first-in-time rule:

> Traditionally, our Court applies the prior panel rule when both rulings cannot be right, because the second case reaches a holding that is opposite to, contrary to, or in conflict with the first. Most often, this occurs when two lines of precedent arise oblivious of each other and eventually butt heads. In such cases, the rule from the first-decided case stands. This command sensibly promotes consistency and reliability in our law, by establishing a default rule when two lines of precedent cannot both be right—the eldest controls.

*Hulon v. City of Lansing*, No. 23-1937, 2025 U.S. App. LEXIS 4086 *14 (Feb. 19, 2025) (concurring op.) (cleaned up).

The decision in Borges's appeal is "opposite to, contrary to, or in conflict with" *Joseph* and *Driver*. Consideration by the en banc Sixth Circuit is needed to promote consistency and reliability of the law on this important issue. For these reasons, Borges asks the Court to grant his petition for en banc rehearing.

s/Dennis C. Belli
DENNIS C. BELLI
ATTORNEY FOR DEFENDANT-
APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that this petition consists of 3,005 words in Times New Roman 14-point type and therefore does not exceed the 3,900-word limit for rehearing petitions under Fed. R. App. P 40.

s/Dennis C. Belli
DENNIS C. BELLI
ATTORNEY FOR DEFENDANT-
APPELLANT

15

CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2025, I electronically filed the foregoing with the Clerk of this Court using the ECF system, which will send notification and a copy of such filing to Alexis J. Zouhary, Assistant United States Attorney, Attorney for Plaintiff-Appellee United States of America.

s/Dennis C. Belli<br>
DENNIS C. BELLI<br>
ATTORNEY FOR DEFENDANT-<br>
APPELLANT